WARNER, J.
 

 In challenging his conviction for possession and sale of cocaine, appellant claims that the trial court erred in denying his motion to quash the warrant to search his home, because it was not supported by facts establishing probable cause to believe that illegal drugs would be found inside his residence. Based upon three purchases of drugs from appellant by a confidential informant under circumstances where a reasonable person could conclude that appellant kept the drugs in his home, we hold that the trial court did not err in denying the motion to suppress. We affirm.
 

 Detectives Brown and Rogers of the Miramar police applied for a search warrant of a residence in Miramar in March 2007. Their probable cause affidavit stated that a confidential informant (Cl) had told them that a male, known to the Cl as “Jay,” sold crack cocaine. The informant gave the detectives Jay’s home address and took them to his residence. The Cl told the detectives that Jay delivers cocaine in his vehicle to purchasers after the purchaser calls his cell phone and orders an amount.
 

 The detectives investigated the tag number of the vehicle in the driveway of the residence and determined that it was registered to James Nichols and confirmed his address at that residence. The detective obtained a photograph of Nichols based on his vehicle registration. Three times within a two-week period the detectives made buys from Nichols using the Cl. For the first buy, Detective Brown did surveillance on Nichols’s home, and Detective Rogers searched the Cl to be sure the Cl was free of drugs or currency. The Cl called Nichols’s cell phone to arrange the purchase of $20 worth of crack. Detective Brown could see Nichols standing outside of his home, in front of the garage, as the Cl made the call to arrange the purchase. Detective Rogers heard the Cl place the order and informed Detective Brown that the order had been made, except that instead of purchasing $20 of cocaine the Cl was going to purchase $40 worth because that was all Nichols was selling. Detective Brown saw Nichols remove his phone from his ear and then enter his house from the driveway. Minutes later Detective Brown saw Nichols exit his home and get in his vehicle alone and drive away. Detective Brown followed Nichols’s vehicle to the pre-arranged purchase place. When Nichols arrived he stayed in his vehicle. Detective Rogers saw Nichols roll down his driver’s side window and hand an item to the Cl. Detective Brown watched Nichols drive away. Detective Rogers met with the Cl, received the purchased cocaine, and was told the Cl paid the $40 in marked currency for it. A search of the Cl showed she had no money or contraband. The cocaine field tested positive.
 

 The next week Detectives Brown and Rogers arranged a similar transaction. Brown was watching Nichols’s residence and observed him outside with children and a dog. The Cl phoned and arranged for a purchase of $20 worth of cocaine. Brown saw Nichols leave and go in the house and then exit the front door a few minutes later. Again Nichols drove to the arranged purchase location and remained in the vehicle. He was again seen making an exchange with the Cl. When Nichols drove away, the Cl gave the cocaine to Detective Rogers and told him she had purchased it from Nichols for $20. The cocaine field tested positive.
 

 A third purchase happened in the same manner a few days later, with the Cl again
 
 *1152
 
 phoning Nichols and arranging a buy. Again the two detectives monitored the call and purchase and saw Nichols leave the residence after the call was made. Again the Cl drove to meet Nichols at a location where the Cl purchased cocaine for $20 with marked funds. A search after the purchase showed the Cl had no money or contraband other than what she had received from Nichols. The cocaine field tested positive.
 

 Based on these three events, the two officers sought a warrant to search Nichols’s home. The warrant was signed and executed five days after the third transaction. The search of the residence revealed 59 grams of crack cocaine, a digital scale, and two guns. Nichols was charged with trafficking in cocaine in an amount of more than 28 grams, but less than 200 grams, and possession of drug paraphernalia.
 

 Nichols moved to quash the warrant and suppress the evidence. He contended that the warrant application never contained any information that the drug transactions had occurred within Nichols’s home. Nichols argued that the warrant affidavit failed to contain any facts upon which the court could find probable cause to believe that there were contraband drugs in the residence.
 

 The trial court denied the motion to suppress, pointing out that in the affidavit the detective said he first saw Nichols receive a call in front of his garage, saw him enter and then exit his home minutes later, and then drive his vehicle to make the sale to the Cl. Likewise, the affidavit indicated that before the second sale the detective also saw Nichols leave the children and dog in the yard, enter the residence, exit the residence, and go immediately to make the sale. The judge concluded that Nichols either went into his house to get the drugs before the sale, or was in his house before the sale, which provided probable cause to believe there were drugs in the house.
 

 After denial of the motion, Nichols pled to the crimes, reserving his right to appeal the denial of the motion to suppress. The trial court convicted and sentenced Nichols. Nichols appeals, claiming error in denying the motion to suppress.
 

 Where the appellant challenges a search conducted as a result of a search warrant, the standard for reviewing courts is whether the sworn facts in the affidavit established a substantial basis for concluding that probable cause existed.
 
 State v. Rabb,
 
 920 So.2d 1175 (Fla. 4th DCA 2006). In doing so, the reviewing court affords “great deference” to the issuing magistrate, as explained by the Supreme Court in
 
 Illinois v. Gates,
 
 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):
 

 The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... concluding]” that probable cause existed.
 

 (citation omitted). Likewise, probable cause also requires a totality of the circumstances approach and a common sense practical approach to those circumstances. Again,
 
 Gates
 
 explains:
 

 In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which rea
 
 *1153
 
 sonable and prudent men, not legal technicians, act.
 

 Id.
 
 at 231, 103 S.Ct. 2317 (citation omitted).
 

 Based upon these standards, and given the deference shown to the magistrate’s assessment, the affidavits provided sufficient facts to provide probable cause that contraband would be found in Nichols’s home even though the actual sales did not take place there. In all three transactions, Nichols took the call from the Cl at his home. He was either inside the home or went into the home before driving off in his vehicle to deliver the drugs. He did not stop at any other location after leaving his house. He delivered drugs on all three occasions. From the information in the affidavits, a reasonably prudent person could conclude that the drugs that Nichols sold were located in his house.
 

 An analogous case is
 
 State v. Howard,
 
 666 So.2d 592 (Fla. 4th DCA 1996). There, the police, using an informant, arranged a buy at a house. The Cl was bugged and drove to the house in order to buy a quarter ounce of marijuana from a person named “Kathy.” Once inside the house the deputy heard Kathy introduce the Cl to the appellant Howard, who agreed to sell the Cl the drugs. The deputy heard Howard say, “I have to go next door to get it.” The deputy saw Howard leave Kathy’s house and walk into the house next door, leave that house, and return to Kathy’s house. Once he was back inside Howard said, “Here it is.” The Cl subsequently gave police marijuana which the Cl said he had gotten from Howard.
 

 The police submitted a probable cause affidavit for the house (Howard’s house) where Howard had gone before delivering the drugs. The magistrate granted the search warrant. Later, Howard moved to suppress the physical evidence obtained during a search of his home. The trial court granted the suppression but on appeal this court reversed. We concluded that there was probable cause to search Howard’s house, because of the officer’s observation that Howard left the site of the transaction saying he would go next door to get the drugs, even though the officer did not personally observe Howard in possession of the drugs. In doing so we again relied on the totality of the circumstances approach to probable cause and deference to the magistrate’s decision:
 

 The supreme court has stressed that the determination of probable cause requires a fact-based analysis and that the results of that analysis will vary depending upon the context of the case.
 
 Schmitt [v. State
 
 ], 590 So.2d [404,] 409 [ (Fla.1991) ]. The evidence in the affidavit need not be conclusive, nor must it meet the “[t]echnical requirements of elaborate specificity” imposed upon legal pleadings.
 
 Schmitt [v. State
 
 ], 563 So.2d [1095,] 1098 [ (Fla.1990) ]. The magistrate’s decision must be upheld unless there was no substantial basis for concluding that probable cause existed.
 
 Id.
 

 Howard,
 
 666 So.2d at 594. In the same vein, here the detectives observed Nichols receive the calls to purchase drugs at his home and leave to deliver the drugs without stopping before the delivery. The practical considerations of everyday life as well as the probabilities based upon the series of three transactions occurring in exactly the same way would lead a reasonably prudent person to conclude that the drugs Nichols was selling were stashed in his house.
 

 Affirmed.
 

 STEVENSON and DAMOORGIAN, JJ., concur.